(June 27, 1991)

■ KENNETH E. RAINE, Appellant, v MARILYN GLEASON et al., Respondents.—Order of the Supreme Court, New York County (Karla Moskowitz, J.), entered June 8, 1990, which granted defendants' motion for summary judgment dismissing the complaint, unanimously modified, on the law, to the extent of reinstating so much of the complaint against defendant Gleason as seeks payment for musical performances rendered between February 1, 1954 through January 31, 1959, inclusive, and, except as so modified, affirmed, without costs.

In 1954, a trust agreement was executed by various film producers and distributors, including the Columbia Broadcasting System, Inc. ("CBS") and Jackie Gleason Enterprises, Inc., governing performances by instrumental musicians belonging to the American Federation of Musicians. Each producer, as a first party to the agreement, consented to pay a portion of the revenues derived from the broadcast of films containing "performances by instrumental musicians * * * rendered between February 1, 1954 and January 31, 1959, inclusive, whenever such films are exhibited on television broadcasts by such first party or by assignees, lessees, licensees, or other users deriving title, lease, license or permission thereto, by operation of law or otherwise, by, from or through such first party." In 1958, Jackie Gleason Enterprises, Inc. ("Enterprises") was

dissolved, and it is undisputed that the assets of the corporation were distributed to its sole shareowner, Jackie Gleason. Among those assets was a collection of kinescope recordings of a one-hour variety show, originally broadcast live as "The Jackie Gleason Show". The variety hour featured a recurring skit similar to the 39 half-hour television films made by Enterprises and aired as "The Honeymooners" series. The skits, originally performed live during "The Jackie Gleason Show", are popularly known as "The Lost Honeymooners", distribution rights to which were granted by Jackie Gleason to defendant Viacom International, Inc. in 1985.

Plaintiff commenced this action in August, 1985, seeking payment from Jackie Gleason, who obtained the kinescope recordings from Enterprises upon its dissolution, and from Viacom, which was incorporated as a wholly-owned subsidiary of CBS in 1970 and spun off as an independent corporation in 1981. The liability of defendants is predicated, respectively, upon the status of Enterprises and CBS as first parties to the trust agreement.

We agree with Supreme Court that Viacom, which acquired the rights to the Lost Honeymooners some 14 years after becoming a separate corporation and some 30 years after the trust agreement was executed, is not bound by any obligation originally assumed by CBS as a first party to that agreement. Viacom's right to use the material was not acquired through CBS, but from Jackie Gleason. Therefore, there is no merit to plaintiff's argument that Viacom is a "successor" to CBS within the contemplation of the provision that the trust agreement binds "the heirs, executors, successors and assigns" of the parties thereto. That Viacom, as a separate entity which was once a part of CBS, is not thereby bound by every contract ever executed by CBS is a proposition so elementary as to require no discussion. More significantly, plaintiff has not demonstrated that Viacom has derived any right or incurred any obligation under the trust agreement executed by CBS which would warrant the conclusion that Viacom is a successor in interest to any rights granted to CBS by that agreement.

Jackie Gleason, by contrast, as the sole shareowner of Enterprises who succeeded to the corporation's interest in the kinescope recordings upon its dissolution, is clearly a "successor" to Enterprises within the contemplation of the trust agreement. He is therefore obligated according to its terms upon exhibition of designated material (containing musical performances rendered between February 1, 1954 and Janu-

ary 31, 1959) by Viacom, which derives its right to use the material, albeit indirectly, "by, from or through" a first party (Enterprises) by way of its successor (Gleason).

Defendant's attempt to demonstrate, through the use of extraneous documents, that the trust agreement was intended to apply only to musical performances which were prerecorded during the applicable period for subsequent broadcast, and not to live performances, is unavailing. The trust agreement is unambiguous, and its interpretation must be discerned from its four corners without resort to extrinsic evidence *(Mercury Bay Boating Club v San Diego Yacht Club,* 76 NY2d 256, 267, 269-270). Concur—Murphy, P. J., Rosenberger, Ellerin and Rubin, JJ.